**Bruce Alan CHEATHAM, Relator**

**v.**

**The Honorable Randall ROGERS, Judge, County Court at Law No. 2, Smith County, Texas, Respondent.**

**No. 12–91–00112–CV.**

Court of Appeals of Texas, Tyler.

Jan. 10, 1992.

J.M. Bandy, Tyler, for relator.

Bert Creel, Roger Anderson, Tyler, for respondent.

COLLEY, Justice.

In this proceeding Relator seeks a writ of mandamus to compel Respondent, the Honorable Randall Rogers, to order real party in interest, Miriam Young (hereinafter "Young"), a court-appointed counselor for the children of the former marriage of Relator and Delois Cheatham (hereinafter "Cheatham"), to produce her personal mental health records. We will conditionally grant the writ.

Relator and Cheatham were divorced by decree of the trial court dated December 20, 1989. Under the terms of the decree, Cheatham was appointed managing conservator of the three children born as issue of the marriage, and Relator was appointed possessory conservator with certain rights of access to and visitation with said children. The decree further provides:

> [T]hat the minor children remain in counseling with Miriam Young of the Counseling and Testing Center Tyler, Texas with each child to have three (3) sessions per month, until such time as the said Miriam Young determines that said three (3) sessions per [month] is not required. Then and in such event, the said [Young] shall submit a letter to the court to decrease monthly sessions of the children. In the event she should later determine that three (3) sessions per month are, in fact, necessary, she shall submit a letter to increase said sessions and shall continue this procedure until such time as she feels said children should be released from future counseling sessions.

The pertinent underlying proceedings in the trial court involve motions to modify the divorce decree. Relator filed a motion to modify, seeking the removal of Young as court-appointed counselor for the children, and Cheatham filed a motion to modify, seeking the termination of Relator's access to the children granted him by the court in its decree.

On April 19, 1991, Relator gave notice of his intention to take the oral deposition of Young on April 22, 1991, at 1:30 p.m. at the law office of his counsel, J.M. (Mick) Bandy. A subpoena duces tecum was issued

requiring Young to produce at the time of the deposition:

> [A]ll psychological and/or psychiatric records in the custody of or subject to the control of Miriam Young ... pertaining to the *mental and/or emotional health of Miriam Young* on which her examination is required. (Emphasis added.)

On April 22, 1991, Young served Relator with her motion and supplemental motion for protection against the subpoena for production of her mental health records. Young asserted in her motions that the subpoena called for "confidential and privileged matters" in violation of her privacy rights, and the privilege against disclosure pursuant to TEX.R.CIV.EVID. 510.[1] Additionally, Young alleged that the discovery sought should be denied because she was not a party to the suit, and Relator "failed to comply" with subdivision (4) of TEX. R.CIV.P. 167 providing that a non-party can be required to produce documents *"only after the filing of a motion setting forth with specific particularity the request, necessity therefor and after notice and hearing."* (Emphasis added.)

A hearing was conducted on Young's motions on April 24, 1991. On that day, Relator filed a written response to Young's motion for protection. He alleged that the discovery vehicle was TEX.R.CIV.P. 201(2), not TEX.R.CIV.P. 167; Relator also alleged that under the exception to confidentiality of mental health records, rule 510(d)(6), the information was not privileged in that it was relevant to this suit affecting the parent-child relationship. Following the hearing, Respondent signed an order on April 25, 1991, quashing the notice to take Young's oral deposition on April 22, 1991, and the subpoena duces tecum. In addition, the Respondent ordered Relator and his counsel "to desist and refrain from any discovery, request for production, subpoena duces tecum ...," and from making any inquiries or reference to Young's mental health records or to her "personal mental or emotional health; and any treatment, hospitalization, testing, diagnosis or prognosis relating to or in any way connected with [Young's] mental or emotional health."

Young argues, in this Court, that her personal mental health records are (1) confidential and not subject to disclosure under rule 510(b), (2) "protected from discovery by [Young's] right to privacy under the United States Constitution," and (3) "not relevant to any issue in dispute in this cause nor reasonably calculated to [lead] to the discovery of admissible evidence." Young also claims she was under no legal duty to offer the records for an *in camera* inspection, and therefore she did not waive her privilege of confidentiality. Relator, on the other hand, contends that the exception to the privilege found in rule 510(d)(6) applies. Rule 510(b), in pertinent part, reads:

> (b) General rule of privilege.
>
> (1) Communication between a patient and a professional is confidential and shall not be disclosed.
>
> (2) Records of the identity, diagnosis, evaluation, or treatment of a patient which are created or maintained by a professional are confidential and shall not be disclosed....

Rule 510(d)(6), in pertinent part, reads:

> *(d) Exceptions.* Exceptions to the privilege in court proceedings exist:
>
> (6) When the disclosure is relevant in any suit affecting the parent-child relationship.

Under rule 510(a), a "professional" is defined to mean any person authorized to practice medicine in any state or nation or one who is licensed or certified by the State of Texas for the diagnosis, treatment and evaluation of any mental or emotional disorders, or is a person who is reasonably believed by the patient to be either a medical doctor or is licensed and certified by the state to make such diagnosis, evaluation, or to treat mental and emotional disorders.

1. All references in this opinion to rules are to the Texas Rules of Civil Evidence unless otherwise noted.

The language of rule 510(a) and (b) and the language of the discovery request conclusively establish that Relator sought disclosure of information rendered confidential by rule 510(b)(1) and (2). The same language likewise establishes the relevancy of the records sought in light of the pleadings of the parties to the underlying suit. Hence, no good purpose would have been served by the trial court's *in camera* inspection of Young's records. Therefore, Young did not waive any privilege by failing to tender the records for *in camera* inspection. *Cf. Inwood West Civic Ass'n v. Touchy,* 754 S.W.2d 276, 278 (Tex.App.—Houston [14th Dist.] 1988, mandamus overruled).

This proceeding requires us to decide three remaining law questions, namely, (1) does the exception provided in rule 510(d)(6) apply in this case; and if so, (2) do Young's privacy rights under the federal constitution bar its application in this instance; and (3) did Relator's failure to comply with the provisions of Tex.R.Civ.P. 167 deprive him of relief in this proceeding.

We first address the third question. We are persuaded that Young's argument that Relator's failure to comply with the requirements of Tex.R.Civ.P. 167 is fatal to his petition is without merit. Here, the discovery vehicle was Tex.R.Civ.P. 201 which provides, in part, that *"[a]ny person* may be compelled to appear and give testimony by deposition in a civil action," and that *"a witness* may be compelled by subpoena duces tecum to produce items or things within his care, custody or control." (Emphasis ours.) In our view, Young's "non-party" status does not exempt her from the application of Tex.R.Civ.P. 201.

Young argues that the exception to the confidentiality privilege provided by rule 510(d)(6) does not apply to non-parties. The heart of her argument is that this exception should be construed as limited to parties because otherwise, non-parties would have no protection under the rule. While that argument is facially appealing, it ignores the plain language of rule 510(d)(6). The exception applies to non-parties and parties alike if the information sought *"is relevant in any suit affecting the parent-child relationship."* (Emphasis added.) Therefore, we reject Young's argument to the contrary.

We conclude that Young's mental health records are relevant to the determination of Relator's motion to modify the divorce decree whereby he seeks to persuade the court to remove Young as court-appointed counselor for the children, as well as to his defense of Cheatham's motion to eliminate or restrict Relator's visitation rights. Young has already rendered a written report (letter) to the court recommending that Relator's rights of access to and visitation with the children be restricted. Indeed, upon receipt of that information, Cheatham filed her motion to modify the divorce decree by eliminating Relator's rights as possessory conservator. Under rule 401, "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Certainly, if the information sought shows that Young's expert opinion comes from one who is impaired mentally or emotionally, she would be effectively impeached by such evidence.

Young's brief, in response to Relator's petition, cites and relies upon *Dossey v. The Hon. Felix Salazar, Jr.,* 808 S.W.2d 146 (Tex.App.—Houston [14th Dist.] 1991) (orig. proceeding), and *Subia v. Texas Department of Human Services,* 750 S.W.2d 827 (Tex.App.—El Paso 1988, no writ). Essentially, Young argues the court in *Dossey* held that *"disclosure of privileged information exceeds* [the scope of discovery]." (Emphasis in original.)

Our reading of *Dossey* reveals that the underlying suit there was a wrongful death action resulting from the collision of an automobile driven by the Relator with a motorcycle operated by the plaintiffs' decedent, their son. The plaintiffs sought discovery based upon their allegations that Relator on the occasion in question was negligent, and driving "under the influence of alcohol at an excessive rate of speed." *Dossey,* 808 S.W.2d at 147. Based on those

allegations, the plaintiffs there sought discovery of Relator's "mental health/medical records" from a "clinical psychologist" with whom Relator voluntarily consulted after the accident. The plaintiffs, claiming that the records were discoverable under the exception to confidentiality provided by rule 510(d)(5), served notice upon relator for an oral deposition accompanied by a subpoena duces tecum calling for production of the records at the time of deposition. The trial court ordered production of the records, and the relator filed his petition for mandamus claiming the privilege provided by rule 510(b)(1) and (2), as he unsuccessfully did in the trial court.

The *Dossey* court's decision did not in any way purport to involve, even by way of dicta, the application of the exception to privilege found in rule 510(d)(6). Thus, *Dossey* does not support Young's arguments, except perhaps its language that the scope of discovery does not include "disclosure of privileged information" which is undisputable. Tex.R.Civ.P. 166b(3)(e); *cf. Stewart v. McCain,* 575 S.W.2d 509, 510 (Tex.1978).

We are solely concerned with the meaning of the admittedly broad language of the exception found in rule 510(d)(6). Young suggests in her response that the decision in *Subia* is based on rule 510(d)(6). That is not so. *Subia* involves an appeal by a parent whose parental rights were terminated; the suit was therefore "a suit affecting the parent-child relationship." Tex.Fam.Code § 11.01(5) (Vernon Supp. 1992). However, in *Subia* the court sustained the parent/appellant's point of error complaining of the admission of the testimony of the psychologist who examined the appellant pursuant to a trial court order. The parent was not informed before the examination that any communication made during the examination *"would not be privileged." Subia,* 750 S.W.2d at 830 (emphasis added). Following its discussion of rule 510 and the exceptions found in 510(d)(4) and 510(d)(6), the *Subia* court decided that the exception provided in 510(d)(4) was applicable because the testimony was based on a *court-ordered examination* in circumstances where the parent was not "previously informed that communications would not be privileged...." *Id.* Thereafter, the court alluded to the exception prescribed by rule 510(d)(6), saying, "[w]e ... believe that (d)(6) of Rule 510 pertains to those situations where there may be mental health information available without the benefit of a court order, as provided by Rule 510(d)(4), which is relevant to a suit involving and affecting the parent-child relationship." *Subia,* 750 S.W.2d at 830–831. The distinction alluded to by Justice Fuller in *Subia* is persuasive, and since in this proceeding the Relator sought discovery of the records created by communications between Young and a "professional" under rule 510(a)(1) and (2) not in response to a court-ordered examination, the broad exception in rule 510(d)(6) applies.

We next decide whether the disclosure allowed by rule 510(d)(6) violates Young's right to privacy, arising from the fundamental freedoms "founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action...." *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), or based on "the shadows cast by a variety of provisions in the Bill of Rights." *Whalen v. Roe,* 429 U.S. 589, 598, n. 23, 97 S.Ct. 869, 876, n. 23, 51 L.Ed.2d 64 (1977). Initially, we note that a limitation of those fundamental freedoms or rights is justified by a "compelling state interest." *Roe v. Wade,* 410 U.S. at 155, 93 S.Ct. at 728; *Kramer v. Union Free School District,* 395 U.S. 621, 627, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969). However, it is also clear that state legislation to protect the state's interest "may not [be] unnecessarily [broad]...." *Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965), but such legislation "must be narrowly drawn to express only the legitimate state interest at stake." *Roe v. Wade,* 410 U.S. at 155, 93 S.Ct. at 727.

There is no doubt that the state has a fundamental and "compelling" interest in the status and welfare of children, especially those children caught up in the

throes of their parents' divorce. As to the instant matter, the state, by its promulgation of rule 510(d)(6), made a necessary intrusion upon the privacy rights of persons who become prospective expert witnesses in judicial proceedings involving the status, welfare, and interest of children. We are of the opinion that this vital and compelling state interest far outweighs Young's constitutional right of privacy with respect to her personal mental health records.

Therefore, concluding that Judge Rogers clearly abused his discretion in refusing to apply the exception, we conditionally grant the writ. The writ will issue only if Judge Rogers fails to promptly vacate his order granting Young's motions for protection, and in its stead, within thirty (30) days from the date of this opinion, issues an order enforcing the subpoena duces tecum when Young's oral deposition is taken by Relator.